## BENJAMIN RICHARDSON *vs.* ISAAC YORK & *als.*

Where land is granted "reserving to the grantor the use and control of the lands granted during his natural life," the reservation gives to the grantor but a life estate in the land; and he has no right thereby to cut and take timber trees therefrom for sale.

And if timber trees be thus cut, they become the personal property of the reversioner, and he may maintain replevin for them.

THIS was an action of *replevin* for a quantity of mill-logs, and came before the Court upon a statement of facts agreed by the parties, in substance, as follows. *Isaac York*, one of the defendants, owned a small farm in *Standish*, of about thirty-five acres, about half of which was woodland, with some timber upon it, and the residue improved land, with the buildings and fences thereon much out of repair; and on the 14th of *Oct.* 1831, by deed of warranty conveyed the same to his son *Joseph*. This deed was in common form, except that immediately following the description of the land, and preceding the *habendum*, were these words, "reserving to myself the use and control of the above described lands during my natural life." *Joseph York*, the grantee, on *Nov.* 24, 1834, conveyed all the pine and hemlock trees upon said land to the plaintiff, "reserving so much of said trees and timber for the benefit of *Isaac York*, who has a life estate in the premises, as shall be necessary, convenient and indispensable to the enjoyment of the premises aforesaid during his lifetime, the quantity reserved and left to be ascertained and designated by *Isaac Spring*." At this time *Isaac York* was poor and unable to support himself, and the income of the real estate was wholly insufficient for that purpose, and in *Dec.* 1834, he agreed to sell a quantity of timber from this land to be

delivered on the bank of *Saco River*, "intending to appropriate the proceeds of the sale to his own support, and had he been permitted so to apply it, he would have had no more, than a comfortable provision thereunto." He with the other defendant proceeded to cut the timber, but before it reached the river it was replevied in this suit.

*Deblois*, argued for the plaintiff, and insisted that the greatest estate *Isaac York* could possibly have, was a life estate; that tenant for life had no right to cut down timber, that being the first thing noticed in the books, as waste; that the restriction was carried so far, that even the tenant for life could not sell firewood to be carried from the land, or clear up woodland for cultivation, much less to cut timber for sale; that when the timber was severed, it belonged to the reversioner under whom the plaintiff claims, and whose rights he has, and that replevin was the proper action in this case. He cited 5 *Greenl.* 232; 1 *Cruise*, 130; 1 *Coke Lit.* 52, *a*; 7 *Johns. R.* 233; 7 *Pick.* 152; 5 *Mason*, 13; 1 *Greenl.* 6; 15 *Mass. R.* 164; 10 *Mass. R.* 303; 3 *Atkins*, 216; *Hob.* 234; 2 *Peere Wms.* 141; 3 *Peere Wms.* 266; 8 *Pick.* 309; 1 *Cruise*, 138; 4 *Mass. R.* 266; 5 *Mass. R.* 341; 3 *Dane*, 187; 5 *Mass. R.* 280; *ib.* 303; 15 *Mass. R.* 362; 16 *Mass. R.* 147; 4 *Greenl.* 306; 1 *Coke Lit.* 53, *a*; 2 *Cro. Eliz.* 533; 1 *Vern.* 23; 2 *Vern.* 738; *Rev. Stat. ch.* 34.

*Codman*, for the defendant, contended, that the action could not be maintained, because the sale to the plaintiff gave him no right to the trees, it being a mere injury to the freehold; that if any person could maintain the suit, it must be the tenant of the freehold, and not the plaintiff; that if the trees were sold, as personal property, and could otherwise pass, that a delivery was necessary; that the true construction of the deed was, that the reservation gave to *Isaac York* all the rights over the real estate during his life, that he would have had, if the deed had not been given, *Joseph* being to have it only, as it was left at *Isaac's* death; that the smallest estate *Isaac* could take was a tenancy for life without impeachment of waste; and that if there was any remedy, it was by bill in equity, and not by this action. He cited 1 *Chitty on Pl.* 146; 9 *Mass. R.* 112; 15 *Mass. R.* 310; 4 *Greenl.* 376; 5 *Greenl.*

277; 12 *East*, 221; 1 *Vesey, jr.* 484; 2 *Peere Wms.* 241; 4 *Coke*, 62.

After a continuance, for advisement, the opinion of the Court was drawn up by

EMERY J. — The great question in this case is, whether the logs replevied are the property of the plaintiff, so as to draw to him the right of maintaining the action. For it is certain, he could not rightfully have entered to cut them himself without the assent of *Isaac York*, one of the defendants.

In the language of *Heath J.*, in *Attersoll* v. *Stevens*, 1 *Taunt.* 183, at *p.* 198, it is stated, as common learning, that every lessee of land, whether for life or years, is liable in an action of waste to his lessor, for all waste done on the land in lease, by whomsoever it may be committed. If a general or a partial permission be given to the lessee in the instrument creating the estate, to commit waste, he is so far a tenant without impeachment of waste. Such a permission vests the property of what is the subject of waste, in the lessee, so that he avails himself of it during the continuance of his interest. It is so with respect to trees and minerals.

From the statement of facts we learn, that the land conveyed by *Isaac York* to *Joseph York*, on which the trees were cut, consisted of about thirty-five acres, from fifteen to twenty acres of which is partially wooded, the residue consists of mowing and pasture, about five acres of that mowing is interval, and of a good quality; and the income of the land is insufficient for the support of said *Isaac*; and that said *Isaac* has not sufficient income from every source for his comfortable support; that he intended to apply the proceeds of the sale of the logs to his own support, and that if so applied, it would not have been more than a comfortable provision thereunto; that the house occupied by said *Isaac* was, and is, greatly out of repair as well as the fences; that the said *Isaac* is very poor, nearly 80 years of age, and very decrepid.

In no part of the statement of facts, or in the deeds, is it made known whether this was an arrangement made by father and son for the support and maintenance of the father, though it is strongly to be suspected.

Richardson *v.* York.

The deed of *Isaac York*, dated the 14th *Oct.* 1831, conveys to *Joseph York* " the north-west half of the homestead farm, whereon I now live, reserving to myself the use and control of the above described lands, during my natural life." The deed of *Joseph York* to the plaintiff, dated 24th *November*, 1834, for $175, sells and conveys to him all the pine trees and hemlock trees standing growing, and being on the northwest half of the homestead farm on which *Isaac York*, now of *Standish*, in the County of *Cumberland*, lives, with license to go on and cut and carry away the same ; the said north-west half, being the same land described in a deed of *Isaac York* to *Joseph York*, dated *October* 14th, 1831, reserving so much of said trees and timber for the benefit of *Isaac York*, who has a life estate in the premises, as shall be necessary, convenient, and indispensable to the enjoyment of the premises aforesaid during his lifetime, the quantity reserved and to be left as aforesaid, to be ascertained and designated by *Isaac Spring*.

In *Paget's* case, 5 *Coke's Rep.* 77, it was resolved that when trees are cut down by tenant for life, the property thereof belongeth to him in remainder in fee.

Afterward, and contrary to the adjudication in *Herlakenden's* case, 4 *Coke's Rep.* 62, it was adjudged by all the Judges in the *King's Bench*, 11 *Coke's Rep.* 79, in *Lewis Bowles'* case, which was trover and conversion, that the lessee without impeachment of waste shall have trees which he cuts, for without impeachment of waste, is as much as without demand for waste done ; otherwise, it is, if it be without impeachment, &c., by writ of waste. It was also resolved, that if trees are blown down with the wind, the lessee, without impeachment of waste, shall have them.

After this determination, it was a necessary consequence, that in general, unless on particular circumstances, the lessee for life, without impeachment of waste, was not to be restrained in equity.

But it is said, that the clause was never extended to allow the destruction of the estate itself, and would not give leave to fell or cut down trees ornamental or sheltering of a house ; much less to destroy or demolish a house. *Packington* v. *Packington*, 3 *Atk.* 215. In that case, the Lord Chancellor declared, that Courts of Equity had in this respect established rules much more restrictive than those of the common law, which gave tenant for life without

impeachment of waste, as large a power over the timber, as tenant in fee simple, that timber might be had for public use. 7 *Bac. Abr. Waste*, 289. It was malicious, extravagant, humorous waste, which the Courts of Equity would restrain.

The parties here have disregarded the provision of our own statute, passed *Feb.* 28th, 1821, *ch.* 34, which provides, " that any person seised of a freehold estate, or of a remainder or reversion in fee simple or fee tail in a lot of woodland or timberland in this State, whereon the trees shall have come to an age and growth fit to be cut, may petition to this Court to have them felled and sold, and the proceeds invested for the use of those interested in such woodlands."

It is not to be questioned, that conformably to the strict construction adopted in *Massachusetts*, that for a tenant in dower to cut timber for sale would be waste, and produce a forfeiture of the place wasted. And so in this State.

But upon the deeds and facts agreed, is the defendant, *Isaac York*, to be subjected to the unmitigated consequences of his acts, as if he was a mere tenant for life without any excuse?

Almost the whole of the cases have arisen under leases, or devises, &c. Here he was original owner, conveying the land in fee, reserving to himself the use and control of the lands during his natural life. It may well be doubted whether this alone would protect him, though the terms are very broad. But though the second deed, under which the plaintiff claims, as purchaser of the trees, might seem to extend to defendant a greater latitude, yet the terms use and control of the land, do not necessarily include destruction of the timber.

In *Davis* v. *Uphill*, 1 *Swanston*, 129, an estate had been limited to *Ann Uphill* for life, remainder to her children, by her deceased husband, as she should appoint; in default of that appointment, to the children in common. They agreed with her, that on her joining in a recovery, the first use should be to her for life, without impeachment of waste. Some difficulty occurred in the conveyance. She commenced cutting, and an injunction was obtained. But the Court refused to continue it to restrain her from cutting timber, unless security was given to her for the full value of all she might cut in her lifetime. This was in 1818.

The expressions in the deed of *Joseph York* to the plaintiff, reserving so much of said trees and timber for the benefit of *Isaac York* as shall be necessary, convenient, and indispensable to the enjoyment of the premises during his natural life, might possibly have misled the defendants to a supposition that they were equivalent to the expressions, without impeachment of waste. But besides this, they may have supposed that the plaintiff has no exclusive property in the trees and timber, till what should be left was ascertained and designated by *Isaac Spring*.

It does not appear, but what the trees cut were of suitable growth, and fit to be cut. *See* 8 *Term Rep.* 145, *Martin* v. *Knowlys*. It is not stated, that they were intended to be applied to the repairs of the fences, or buildings, but the poverty and age of the defendant shows that the supply would be *convenient*, if not necessary for his enjoyment of the premises.

In *Virginia* it is held, by *Roane J., Findley* v. *Smith*, 6 *Munf.* 134, that in considering waste in this country, the common law, by which it is regulated, adapts itself in this, as in other cases, to the varied situations and circumstances of the country. That cannot be waste, for example, in an entire woodland country, which would be so in a cleared one. The contrary doctrine would starve a widow, for example, who could not subsist without cultivating her dower land, nor cultivate it without felling the timber. A clearing of the land in such circumstances, would not be a lasting damage to the inheritance, nor a disherison of him in remainder, which is the *true definition* of waste. Here the widow is not dowable of wild lands, and so is not put in temptation to fell the trees.

In the case under consideration, it is not among the facts agreed, that what was done was to the prejudice of the plaintiff's inheritance. *The whole is left on the allegation of a cutting of pine and hemlock timber.*

We must gather the intention of the parties from their deeds, as well as we can on the words in the deed. And though we may conjecture, that the grantor, *Isaac,* intended not to be limited by the terms *use and control* to any thing, but the employment of the property during his life as he did before ; and though this conjecture is strengthened by *Joseph's* explanation or enlargement in his deed to the plaintiff ; and though it does not appear, but there is a suffi-

ciency of such timber left for the remainder man, yet upon the facts agreed, the plaintiff, according to the rules of law, *upon the severance by the defendants of the pine and hemlock timber from the freehold, became the owner of it.* We may lament the carelessness with which parties have instruments drawn relating to the relative rights of tenant for life and persons in reversion or remainder. But in this case, in the opinion of the Court, the defendant, *Isaac York,* by his reservation, remained liable to impeachment of waste; and therefore the defendant must be defaulted.