### DENNETT v. DENNETT.

A devise to M. D. to descend to the youngest son of his body, and from him to the oldest male heir of said youngest son of his body, &c., and in failure of such issue, to the heirs of said M. D. for ever, gives to the youngest son an estate for life only, and not an estate in fee. The fee subject to the contingent devises for life, vests in M. D.

Though waste at common law lies in favor of the first estate of inheritance only, in chancery a bill lies for any party in remainder whose estate is injured.

The rule in *Shelley's Case* was in force in this State before the Revised Statutes.

IN EQUITY. The bill sets forth, that the defendant, by the last will of Jeremiah Dennett, proved August 17, 1818, is seized as tenant for life of a certain farm and buildings in Portsmouth, bounded, &c., containing about eighty acres; that the plaintiff is seized of the remainder thereof, expectant on the defendant's decease; and the defendant on or about the first of July, 1860, entered upon and took possession of said premises as tenant for life, and has ever since been in possession of it.

There were then a great number of timber and other trees on said farm, and the defendant has lately caused divers of said trees, namely, one hundred and sixty pine trees and one elm tree, to be felled and cut up for fuel, the same not being fit to be cut, and said wood amounting to forty cords pine and two cords elm wood; and the said quantity of wood is not needed for use upon said farm, and the. defendant intends to sell and dispose of the same to his own use, and to the damage of the plaintiff's reversion, and the defendant intends and threatens to cut down and use for fuel other trees there growing, to the injury of the plaintiff's reversion. The bill then prayed an injunction to restrain the defendant from committing waste upon said premises, and from felling and cutting down timber or other trees growing on said premises, except at seasonable times, in proper quantities, for use on said premises, and in a husbandlike manner; and for other relief.

The defendant's answer admits he is in possession of the premises described, under a decree of the court in the case reported 40 N. H. 498, but denies that he is a mere tenant for life, and says he owns in fee two thirds of the reversion after his life estate,

unless the court shall decide that the reversion belongs to his oldest male heir.   He admits he has cut one elm on said premises, but it was in great danger of falling, and a quantity of pine wood not measured, he supposes forty cords.   He says the buildings have been long neglected, and in need of repair, and he commenced cutting wood to sell, to obtain money to make said repairs, as he believes he has a right to do, and that in so doing he intends only to cut such trees as are suitable for the purpose.   The defendant believes the bill vexatious and oppressive, because, so far as he knows or believes, the plaintiff can not, under any construction of the will, claim more than one sixth part of the reversion of the property ; by the amended answer not over one forty-eighth.

It is agreed that either party may refer to the will of Jeremiah Dennett, the material words of which are, "I give and devise to my son, Mark Dennett, all the residue of my estate, to descend to the youngest son of his body begotten, and from him to the oldest male heir of said youngest son of his body lawfully begotten, and in failure of such issue, then to the heirs of said Mark Dennett for ever.

Joseph F. Dennett, the defendant, was the youngest son of Mark Dennett.

William H. Dennett, the plaintiff, was an older son, who claimed the property by virtue of a deed from his father.

This deed was impeached on the ground of want of capacity of the grantor.   And much evidence was taken relative to his mental condition.   He was subject to fits ; for the last eight or ten years of his life not always temperate, and his health and mind feeble. Some of the witnesses thought him capable, others incapable of transacting business.

*Hatch & Webster*, for the plaintiff.

*Rollins*, for the defendant.

BELL, C. J.   There is no pretense that a tenant for life has any right to cut and sell wood or timber to raise money to pay for repairs, however necessary or indispensable.   Co. Litt. 53, b ; 7 Bac. Ab., 261, Waste, F ; 23 Vin. Ab. 454, Waste, M 12, 13, 28 ; Bro. Ab. 112 ; *Maleverer* v. *Spinke*, Dyer 356, pl. 32 ; *Elliot* v. *Smith*, 2 N. H. 430 ; Com. Dig., Waste, D 5 ; *Bowles' Case*, 11 Co. 82 ; *Fuller* v. *Wason*, 7 N. H. 341 ; *Padelford* v. *Padelford*, 7 Pick. 152 ; *Kidd* v. *Denison*, 6 Barb. 14 ; *Clemence* v. *Sture*, 1 R. I. 272 ; *Marlborough* v. *St. John*, 10 E. L. & E. 148 ; *Clark* v. *Holden*, 7 Gray 11 ; *Webster* v. *Webster*, 33 N. H. 22 ; *Richardson* v. *York*, 14 Me. 220 ; *Babb* v. *Perley*, 1 Me. 1.

The case of *Loomis* v. *Wilbur*, 5 Mass. 13, and Walk. Am. Law 302, alone give countenance to a different doctrine.

The great question of the case is, whether the defendant's interest is merely a life estate.

For the purposes of the former case, it was sufficient to determine that Mark Dennet did not take an estate tail, which could be barred by his deed ; that his deed, made for the purpose of barring a

supposed entail was inoperative to bar the contingent estate given to his younger son, and that the defendant, as his youngest son, was entitled to a life estate in the land, and consequently to the possession of the property.

The present case raises the question, whether he is not entitled, as he claims, to an estate in fee. This claim rests on two propositions, first, that wherever in a will there is a devise over, on failure of issue of a party, he will take an estate tail by implication, and, secondly, that wherever a party under the statute *de donis* would take an estate tail, he takes under our law a fee-simple.

The authorities are very clear and abundant, that where an estate is limited over on default of issue of another party, the latter takes an estate tail by implication. See the cases collected in 6 Cruise Dig., Devise, ch. 12.

And it is doubtless generally true, that the party who would at common law take an estate tail, will here take a fee-simple.

But it by no means follows that such an implication can be made where estates tail do not exist. Such an implication is consistent with the devise over of the estate, after the estate tail has terminated, because there may be a remainder over after such an estate. The effect would be entirely different if the implication was of an estate in fee, because no estate in fee admits a remainder, the implication of an estate in fee must destroy the devise. It could not take effect as an executory devise, because such a devise must be so framed that it must take effect within a life or lives in being, and twenty-two years after. A devise over, after a general failure of issue, can not take effect as an executory devise. 6 Cruise Dig., Devise, ch. 17, sec. 17.

It is a settled principle, that, in the construction of deeds and wills, effect must be given to every word and clause if practicable; and no implication can be made, which would have the effect to annul any clause of a will which, without it, admits of a reasonable interpretation and effect. *Drew* v. *Drew*, 28 N. H. 494; *Richardson* v. *Palmer*, 38 N. H. 218.

This consideration seems to us entirely conclusive against such implication, and we are therefore compelled to hold that a devise over, on failure of issue of one devisee, will not give an estate in fee by implication to that devisee. Whether any, and if any what, implication could be made in favor of such issue, if the case showed there was such, it is not necessary now to inquire.

Our conclusion then, is, that Joseph F. Dennett took, by the will here in question, a life estate and nothing more, and that there is no implication in his favor of any estate whatever. Having but a life estate, he can not justify the waste he has committed.

It remains to be considered whether the plaintiff has by law an interest in this estate which entitles him to the relief he seeks.

The party entitled to maintain the old common law action of Waste, is he who holds the immediate estate of inheritance in remainder, or reversion. Co. Litt. 53, b 356; 7 Gw. Bac. 263; 1 Cruise Dig. 124; *Paige's Case*, 5 Co. 76, b; but chancery will interpose where there is an intermediate state, and consequently there

is no such rémedy by law. · Ad. Eq. 139; *Perrot* v. *Perrot*, 3 Atk. 94; *Vane* v. *Barnard*, 2 Vern. 738; 2 Wat. Eden on Inj. 199, b. And it is said an action on the case in the nature of waste, may be brought by the person in remainder for life, or years, as well as by a reversioner in fee. 2 Wms. Saund. 252, n. 7; 2 Wat. Ed. Inj. 199, 5; 1 Cruise Dig. 192.

The plaintiff claims, as grantee of Mark, the fee in the entire reversion. His title as such depends on the question, whether Mark was the owner of the reversion at the time of his conveyance. By the terms of the will all the residue of the devisor's estate was given to Mark, to descend to his youngest son, and from him to his oldest male heir, and in failure of such issue, then to heirs of said Mark for ever. If by this language Mark took a fee, notwithstanding the devises intervening between the devise to him and the mention of his heirs, he had a good right to convey his life estate, and the reversion after the intervening estates, to the plaintiff, and the latter is now sole owner of the reversion, if his deed was well executed.

This depends on the question, whether the rule in *Shelley's Case*, as it is called, was part of the law of New-Hampshire in 1818, when this will took effect. By this rule, where the ancestor takes an estate of freehold by any gift or conveyance, and in the same gift or conveyance there is a limitation, either mediate or immediate, to his heirs, the word heirs is a word of limitation of the estate, and not of purchase. The consequence of this rule is, that the first taker takes the whole estate in fee-simple, subject to the intervening estates limited by the gift. *Shelley's Case*, 1 Co. 94, 104; 1 Prest. Est. 264; 4 Kent Com. 214; Co. Litt. 22, b, 319, b.

In the former decision it was said, "It is contended that the rule in *Shelley's Case* was part of the law of this State in 1818, when the will of Jeremiah Dennett took effect, and that it is consequently to govern always the construction of this will and the rights of the devises under it. We are inclined to regard both these propositions as sound.

In the present case we have considered this question, and are of opinion that our impression then was correct. It has been long settled, and very often decided, that the body of the common law, and the English statutes in amendment of it, so far as they are applicable to our institutions, and the circumstances of the country, were in force here, upon the organization of the provincial government; and they have been continued in force by the constitution, so far as they are not repugnant to that instrument, until altered or repealed by the Legislature. *State* v. *Rollins*, 8 N. H. 550.

We are unable to discover that this rule of construction, which has constituted a part of the common law for centuries, is in any respect inapplicable to our institutions, or to the circumstances of the country, or repugnant to the constitution. And it has been regarded by legal writers as part of the common law of every State where it has not been repealed by statute. 2 Wash. R. P. 274; 1 Swift's Dig. 141; 4 Kent Com. 214; Walk. Am. Law 310; Willard R. E. 166; 2 Bouv. Inst. 290.

The result then is, that the remainder to the heirs of Mark Dennett united with his life estate, and he was seized in fee, subject to the intervening estate of Joseph F. Dennett, &c.　This interest he had consequently the power to convey.

We have examined the evidence in relation to the capacity of Mark Dennett to execute the deed under which the plaintiff claims the reversion; and though the evidence shows his mental powers somewhat impaired from age, disease, and other causes, it falls very far short of proving incapacity to contract or to convey his property.　His deed, then, conveyed his interest, and the title is now vested in the plaintiff, who is consequently the proper party to commence a suit to prevent waste, and the injunction, as prayed in the bill, is consequently to be made perpetual.

The right to an account for waste already committed is incidental to the right to file a bill to prevent future waste, though no bill will lie merely for an account for waste done, because the plaintiff has an ample remedy at law.　Will. Eq. Jur. 139; 1 Stor. Eq. Jur., sec. 518; Jer. Eq. Jur. 510; 1 Mad. Ch. 149.

Upon a motion for that purpose, a master may be appointed to take an account of the wood cut, beyond what the defendant might rightfully cut for the use of the farm, if the parties are unable to agree.