WOODEN and others *against* HAVILAND.

HAVILAND *against* WOODEN and others.

A party to a mortgage deed, in the condition of which a material omission was made through the mere mistake of the scrivener, and contrary to the intention of the parties, is entitled, in a court of chancery, to have that mistake corrected, irrespective of any claim, by the adverse party, of misapprehension on his part in the mortgage transaction.

*Qu.* Whether by a devise of land to *M.,* the testator's daughter, during her natural life, and after her decease, to her heirs forever, a child of *M.,* born before the making of the will, took, in the life-time of *M.,* a vested, or a contingent interest.

*Fairfield,*
June, 1846.

Wooden
*v.*
Haviland.

If a mortgagee take, by virtue of the mortgage deed, any estate whatever, which is still subsisting, he is entitled to a decree of foreclosure of that estate, as against the mortgagor.

On a bill of foreclosure, and a cross-bill filed by the defendant, the facts found by the court were these. The father of the defendant having become embarrassed in his affairs, his creditors met at his house, at his request, to receive propositions from him for his relief. His wife, mother of the defendant, had an estate for life in certain lands, and the defendant herself had some interest therein, either vested or contingent. It was proposed to the creditors, by a counsellor at law, in behalf of the defendant and her father, that the plaintiff, one of such creditors, should assume the debts due to them and discharge his own; that the defendant, then between twenty-one and twenty-two years of age, should give her promissory notes for the amount so assumed and discharged; that the father and his wife should release to the defendant their interest in said lands; and that the defendant should then mortgage the same lands to the plaintiff in fee-simple, by a deed containing the usual covenants. The plaintiff, being informed by the defendant's counsel, that he would thereby obtain a good title to the mortgaged premises, accepted the proposition: which was carried into effect by the parties. The defendant resisted a decree of foreclosure, on the ground of undue influence and a misapprehension of her title. Held, 1. that the plaintiff not having practised any fraud, or made any representations to induce the defendant to act, but having discharged his debt and assumed liabilities, relying upon the representations made by the defendant through her counsel, and upon the security given by her with an assurance that it was good, ought to be protected therein as against her; 2. that every fact material in the case being within the defendant's knowledge, who acted with the muniments of her title before her, and under the advice of counsel and her nearest relatives, there could be no mistake on her part, for which a court of chancery could afford her relief; 3. that the case disclosed no undue influence which ought to affect the plaintiff; 4. that consequently, he was entitled to a decree of foreclosure, and that in the usual form.

THE first of these was a bill in chancery, seeking the reformation of a mortgage deed and a foreclosure of mortgaged premises. The other was a cross-bill, setting forth a mistake or misapprehension on the part of the plaintiff therein, relative to the mortgage contract, and praying for equitable relief.

On the 27th of *April* 1842, *Mary J. Haviland,* the defendant in the original bill, made and gave to the plaintiffs severally four promissory notes, for certain sums therein expressed, amounting to 1200 dollars, payable two years after date, with interest; and to secure the payment of such sums of money, she afterwards, on the same day, executed and delivered to the plaintiffs her deed of one equal undivided half of a certain tract of land therein described, with covenants of warranty and seisin; to which deed the following condition was annexed: " Provided nevertheless, if I, the said *Mary J. Haviland,* shall well and truly pay to the grantees the sums

mentioned in said notes, " It was agreed by the

parties to the deed, at the time of its execution, that the condition thereto should be so drawn, that it should be void, upon the payment of said notes according to the tenor thereof; and they intended that a stipulation to that effect should be inserted in the condition; but the person who drew the deed, omitted, by mere mistake, to insert it therein; which mistake was not known to the plaintiffs, at the time of the execution and delivery of the deed, nor was it discovered by them until long afterwards. The mortgagor has not paid the notes, or any part thereof.

On the cross-bill, the following facts were found. *Asa Irish*, the former proprietor of the mortgaged premises, died seised thereof in fee-simple, in 1830; and by his last will and testament, dated the 20th of *November* 1826, he devised the same as follows: " I give, bequeath and devise to my daughter, *Martha Haviland*, all the residue of my home farm, [including the mortgaged premises] during her natural life, and after the decease of my said daughter *Martha*, to *her heirs forever*." *Mary J. Haviland*, the plaintiff in the cross-bill, is the daughter of said *Martha*, and was born before the date of said will: her mother had one other child, born after the death of the testator; and were these the only children of their mother. In *April* 1842, *Ebenezer Haviland*, the husband of *Martha*, became embarrassed in his affairs, and his property was attached by some of his creditors. The plaintiffs being also creditors of his, met with his other creditors at his dwelling house, at his request, for the purpose of receiving propositions from him to relieve himself from his embarrassment. It was then proposed to the plaintiffs, by a counsellor at law, acting in behalf of *Ebenezer* and *Mary J. Haviland*, that the plaintiffs should assume the debts due from *Ebenezer* to his other creditors who had attached his property; that for the sums they should thus respectively assume, together with the sums in which *Ebenezer* was indebted to the plaintiffs respectively, *Mary J.* should give her promissory notes, payable in two years, with interest; that *Ebenezer* and *Martha*, who were then in possession of the mortgaged premises under such devise, should convey the undivided moiety of said tract of land to *Mary J.*, by deed of quit-claim; and that she should thereupon mortgage the same to the plaintiffs, in fee-

*Fairfield,*
June, 1846.
_____
Wooden
*v.*
Haviland.

simple, by deed with the usual covenants of warranty and seisin; the counsellor informing the plaintiffs, that they would thereby obtain a good title to the premises. The plaintiffs accepted the proposition; and thereupon they severally assumed and paid different amounts of the debts of *Ebenezer* due to his creditors, and discharged their respective claims against him. *Ebenezer* and *Martha* accordingly conveyed said undivided moiety, by quit-claim deed, to *Mary J.,* her heirs and assigns forever; and she, in consideration of the premises, and to aid her father, gave the notes specified in the original bill, and to secure the same, mortgaged the premises, by deed containing the usual covenants of warranty and seisin. *Ebenezer* died afterwards, before the date of the original bill. *Martha* is still living. It was understood and agreed between *Ebenezer* and *Mary J.,* at the time of the transaction referred to, that he should pay said debts, and upon such payment, she should re-convey to her mother her life estate in the premises; but the plaintiffs were not parties to this agreement, and had no knowledge thereof. *Mary J.,* at the time of giving said deed and notes, was between the age of twenty-one and twenty-two; and acted on the occasion, by and with the advice and consent of her father. At the time of giving the notes and executing the deed, the parties had knowledge of said devise, and believed that *Mary J.* was entitled to and had a vested interest, by way of remainder, in the mortgaged premises. The undivided half of the land mortgaged is worth 3000 dollars, and the life estate of *Martha* is worth 500 dollars.

The case was reserved for the advice of this court as to what decree should be passed.

*Hawley,* for the plaintiffs, contended, 1. That they were entitled to the relief sought by their bill. In the first place, they are entitled to the reformation of the mortgage deed. It is the peculiar province of a court of equity to correct mistakes. 1 *Madd.* 49. In our own courts, this has been frequently done, and never denied in a case like the present. *Washburn* v. *Merrills,* 1 *Day* 139. *Peters* v. *Goodrich,* 3 *Conn. R.* 146. *Smith* v. *Chapman,* 4 *Conn. R.* 344. *Watson* & al. v. *Wells,* 5 *Conn. R.* 548. So also in *New-York. Wadsworth* v. *Wendell,* 5 *Johns. Ch. R.* 224. *Gillespie* v.

*Moon,* 2 *Johns. Ch. R.* 585. Secondly, the plaintiffs are en-
titled to a decree of foreclosure of such right as the defen-
dant may have, whatever that may be. *Williams* v. *Robin-
son* & al. 16 *Conn. R.* 517. If the interest devised was a
*vested* interest in the defendant during the life of her mother,
then, it will be conceded, the plaintiffs have a fee-simple. If
it was contingent, then a title not *in esse* passed by estoppel,
to avoid circuity of action. 1 *Sw. Dig.* 621. *Stow* v. *Wyse,*
7 *Conn. R.* 214. *Coe* v. *Talcott,* 5 *Day* 88. *McCranchan*
v. *Wright,* 14 *Johns. R.* 193. *White* v. *Patten,* 24 *Pick.*
324.

2. That the facts alleged in the cross-bill and found by the
court, furnish no ground for relief in favour of the original
defendant, or in opposition to that sought by the plaintiffs.
In the first place, there is no fraud; and admitting that the
defendant acted under a mistake as to the nature of her title,
and the extent of her interest in the land, she, in fact, did
precisely what she proposed and intended to do. She knew
what covenants her deed contained, and what was their legal
import and effect. She believed, indeed, that she had a *vest-
ed* interest, which a deed without covenants would transfer.
But she does not pretend that she supposed the covenants
would not bar a contingent interest; and unless she did, the mis-
take was not such as would have affected her conduct. But
secondly, if there was any mistake, it was a mistake in matter
of *law,* which will not, under the circumstances, afford ground
for relief. *Chesnut-Hill Reservoir Company* v. *Chase,* 14
*Conn. R.* 133. *Hunt* v. *Rousmanier,* 1 *Pet.* 1. *Wheaton* v.
*Wheaton,* 9 *Conn. R.* 96. *Storrs* v. *Barker,* 6 *Johns. Ch. R.*
166. *Champlin* v. *Laytin,* 18 *Wend.* 407. Thirdly, there
was not even a mistake in point of law; for the interest,
which the defendant took, under the will of her grand-father,
and which she had, at the time of giving the notes and execu-
ting the mortgage deed, was, as the parties supposed, a vested
interest by way of remainder. *Reeve's Essay,* 7–10. 4 *Kent's
Com.* 194. 197. 1 *Sw. Dig.* 97. 196. *Doe.* d. *Barnes* & al.
v. *Provoost,* 4 *Johns. R.* 61–4. *Dingley* v. *Dingley,* 5 *Mass.
R.* 535. *Bowers* v. *Porter,* 4 *Pick.* 198.

*Booth,* for the defendant in the original bill and plaintiff in
the cross-bill, contended, 1. That owing to the mistake and

misapprehension of all parties, she gave covenants in a deed and notes, which she would not have given, if she had understood her title; and she ought not to be foreclosed of the fee in the mortgaged premises, before she can avail herself of it. In support of this proposition the following considerations were urged. In the first place, the fee is *contingent.* A devise to the heir or heirs of a person living, is always contingent. *Nemo est haeres viventis.* 10 *Conn. R.* 448. *Pow.* on *Dev.* 236. 238. 240. 241. 244. *Archer's* case, 1 *Rep.* 66. Secondly, the rule in *Shelley's* case is founded on this construction, which has been recognized in *Connecticut. Bishop* v. *Selleck,* 1 *Day* 299. *Goodrich* v. *Lambert,* 10 *Conn. R.* 448. *Allyn* v. *Mather,* 9 *Conn. R.* 114. See also *Fearne Cont. Rem.* in loc. *Perrin* v. *Blake, Harg. L. T.* 504. Thirdly, the abrogation of the rule in *Shelley's* case by statute, cannot alter the construction. Fourthly, a court of equity will protect those who act under *undue influence,* even where no fraud has been practised. The defendant in his case acted under the influence of her parents and the creditors. They made use of the filial affections of a warm-hearted and inexperienced girl, just arrived at full age. Expectant heirs are generally relieved. *Mad. Ch.* 123. 173. Fifthly, a *mistake in law,* like this, will be corrected in equity. 2 *Sw. Dig.* 100. Sixthly, that a decree would be *inequitable,* as this would be, is always a sufficient defence in equity. 1 *Mad. Chan.* 404, 5.

2. That if the court grant any relief in favour of the plaintiffs, yet as they ask the correction of a mistake in the deed, it will be done only upon the correction of other mistakes in the same transaction, whether of law or fact. 8 *Com. Dig.* 78. (*Ham.* ed.) The decree should be on condition that the plaintiffs discharge any further claim on the covenants and notes.

3. That the limitation being a matter of discretion merely according to the circumstances of the case, without regard to technical rules; if the decree is not conditional, it should at least limit the foreclosure, on the life estate, to a reasonable time, and on the fee, to a certain time after the death of *Martha Haviland,* the tenant for life. It is the peculiar advantage of a court of equity that it may adapt its decrees to the exigencies of the case; and there is no difficulty in

doing so here. The plaintiffs, by getting a foreclosure on the life estate, can do what they please with *that ;* and the use of the property will keep the interest down, and also keep the property in good repair.

WAITE, J. The first question is, whether the plaintiffs are entitled to have the mistake in the mortgage deed given to them by the defendant, corrected. It is alleged by them, and found by the court, that by mere mistake of the person who drew the deed, the provision that it should be void upon the payment of the notes according to their tenor, was omitted, contrary to the meaning and intention of the parties. That such a mistake may be corrected, by a court of chancery, has been too often decided, to be now questioned. *Chamberlain* v. *Thompson,* 10 *Conn. R.* 25. *Carter* v. *Champion,* 8 *Conn. R.* 259. *Watson* & al v. *Wells,* 5 *Conn. R.* 548. *Smith* v. *Chapman* & al. 4 *Conn. R.* 344.

Indeed, the general principle is not denied ; but it is claimed, that it ought not to be done, in the present case, unless the plaintiffs will consent to the correction of that which is claimed to be a mistake on the part of the defendant. What the merits of that claim are, will hereafter be considered.

2. Another question has been discussed, by the counsel, relating to the construction of the will of *Asa Irish,* the grand-father of the defendant—whether under it she took a contingent or a vested interest in the property by her mortgaged to the plaintiffs. But a decision of this question, in the present case, is unnecessary ; for the rule is, that if the mortgagees take any interest whatever, which is still subsisting, they are entitled to a decree of foreclosure of that estate, as against the mortgagor. *Williams* v. *Robinson* & al. 16 *Conn. R.* 517.

Now, it is admitted, that *Martha Haviland* took, under the will of her father, an estate for her life : that estate has been conveyed to the defendant, and by her mortgaged to the plaintiffs. The mother is still living, so that the plaintiffs have, at least, an estate for the life of the mother, independent of the estate, whatever it may be, devised to the defendant. Whether therefore the defendant, by her mortgage deed, conveyed to the plaintiffs an estate in fee, or only an estate for the life of the mother, they are equally entitled to a decree

in their favour. The court, upon bills for a foreclosure, will not ordinarily go into an enquiry as to the quantity of estate mortgaged ; especially where there are other persons, not before the court, who may be interested in the question.

3. But the principal ground for defence is, that the defendant acted under a mistake and misapprehension of her rights, and was therefore induced to execute covenants and promissory notes, which she would not have done, had she understood her title. Admitting the fact to be so, have these plaintiffs so conducted that they are to suffer in consequence ?

The court has found, that her father had become embarrassed in his affairs ; that his property had been attached ; and the plaintiffs and other creditors met at his house, at his request, for the purpose of receiving propositions, with a view of relieving him from his embarrassments. It was proposed to them, by a counsellor at law, in behalf of the defendant and her father, that the plaintiffs should assume his debts, and discharge theirs against him ; and that the defendant would give her promissory notes, payable in two years, for the amount so assumed and discharged ; and that the father and his wife would release to the defendant their interest in the mortgaged premises, and she would mortgage the same to the plaintiffs in fee-simple, by deed with the usual covenants. The plaintiffs being informed, by the defendant's counsel, that they should thereby obtain a good title to the mortgaged premises, accepted the proposition ; and the notes and deed were accordingly given by the defendant.

Upon what principle, then, are these plaintiffs to suffer ? They practiced no fraud, made no representations to induce the defendant to act. They acted upon the representations made by the defendant through her counsel, and were thereby induced to part with their property, relying upon the security given by the defendant, which they were assured was good. Every fact material in the case was within the defendant's knowledge. The will of her grand-father was before her ; and she was acting under the advice of counsel and her nearest relatives.

What reason, then, had these plaintiffs to doubt the assurances made to them ? If there was any mistake on the part of the defendant, it was a mistake as to the law, for which a court of chancery can grant her no relief.

Were the defendant disposed to place the plaintiffs in the condition in which they were when the arrangement was made, there would be more justice in her claim. But this she does not propose. Indeed, this is in substance all they ask. They simply call upon her to repay them for the property which they have parted with, at her request, and upon her assurance that they should be thus repaid. Upon doing this, she has the property which she has mortgaged restored to her, and she is absolved from all her covenants.

But this she is not satisfied with. She requires more—a sacrifice of their property for her benefit. And why? Because she was not rightly informed as to the state of her title. And whose fault was this? Surely, not that of the plaintiffs, who have never deceived her. They had no reason to doubt but that, by the proposed arrangement, they would obtain, what they were assured they should, a good title, especially when she was not only willing to convey all her interest, but to give covenants as to her title.

Again, it is said, here has been undue influence, against which a court of equity will relieve, even if there has been no fraud. Had the notes and covenants been obtained by the father, for his benefit, and were he the party alone to be affected by the decree, the case might be different.

But here is no evidence of any undue influence, by these plaintiffs, or of any knowledge that such influence had been exercised by others. They, indeed, knew that the arrangement was made with a view of relieving the father from his embarrassments; but they, at the same time, knew, that she had power to do it, if she thought proper; and as she proposed the course, without any advice or request on their part, what reason had they to doubt that the offer was not freely made?

It is, finally, insisted, that there should be a special decree, limiting the foreclosure of the life estate to a reasonable time, and the fee to a period subsequent to the death of the mother. But we see no sufficient reason for adopting that course. The defendant has failed to show any fraud or misconduct, or any want of good faith on the part of these plaintiffs. Why then are they not entitled to a decree in the usual form?

It is said, that by the death of the defendant before her mother, the plaintiffs may lose all but the estate for the life of Mrs. *Haviland.* How that may be, for the reasons already

*Fairfield,*
June, 1846.

Wooden
*v.*
Haviland.

stated, we do not determine.    It is a sufficient answer to this claim, that the plaintiffs, whose business it is to take care of their interest, ask for no such decree.

The defendant having failed to show a sufficient reason, why the mistake in the deed given by her to the plaintiffs should not be corrected, our advice is, that a decree be made correcting that mistake, and allowing her a reasonable time for the redemption of the mortgaged premises.

In this opinion the other Judges concurred.

Decree for plaintiffs.