## WEBSTER *v.* WEBSTER & a.

A deed conveying land in fee simple contained a reservation in these words : "Reserving all the right, title, and interest in and unto the above-named land and buildings for and during my natural life."—*Held*, that the reservation did not give the tenant for life the right to cut down and sell wood and timber.

Where the complainant, in a bill for an injunction to restrain waste, claims title under a deed from the defendant, the defendant cannot, in defence to the bill, show by parol evidence that there was a mistake in the draft of his deed to the complainant.

If a tenant for life of a farm have other outlying woodland, he may take all his necessary fuel from the farm, though, when he formerly owned the farm in fee simple, he was in the habit of taking part of his fuel from the outlying woodland.

If the owner of a farm sell it in fee, and take back a conveyance for his life, his former practice in the manner of taking wood for fuel is not competent evidence on the question whether he has committed waste in cutting wood and timber.

BILL IN EQUITY. The bill stated that the defendant, Isaac Webster, jr., who was father of the plaintiff, on the 7th of August, 1852, by his deed of that date, conveyed to the plaintiff a farm in Kingston, containing about sixty acres, setting out the deed, which contained a reservation in these words : " reserving all the right, title, and interest in and unto the above-named land and buildings for and during my natural life ;" that on the same day the plaintiff reconveyed the same farm and premises to the defendant, Isaac Webster, jr., to hold for the term of his life, setting out the last-named deed, which was in the usual form, and had no provision respecting waste ; that the defendant, Isaac Webster, jr., then entered under his deed for life, and was still in possession under that title, and that the plaintiff had the reversion in fee, as conveyed to him by the deed of Isaac Webster, jr.

That at the time of the conveyance there was a large quantity of wood and timber growing on the premises, including several hundred oak and white pine timber trees ; that Isaac Webster, jr., and the other defendant, Collins, acting under him, had cut down and split into firewood a large number of the oak trees fit for ship timber, and other timber, and threatened to cut down and carry away all the wood and timber on the land ; and insist that, by virtue of the reservation in the deed of Isaac Webster, jr., to the plaintiff, he, Isaac Webster, has the right to cut down and carry off all the wood and timber on the land.

The bill prayed for an injunction against waste, and for an account of the timber trees already cut.

The joint answer of the defendants admits the deeds set out in the bill, and that by virtue of the reservation in his deed to the plaintiff, Isaac Webster, jr., claims to hold the premises without impeachment of waste ; alleges that it was agreed between the plaintiff and Isaac Webster, jr., that the convey-

ances should be so drawn and executed as to give Isaac Webster, jr., the same control over the farm that he had exercised before, and the right to cut and carry off any or all the wood and timber from the farm, if he should see fit so to do ; that neither of the parties to the deeds understood or intended that by those conveyances Isaac Webster should be restricted to an estate for his life, punishable for waste ; that if Levi B. Webster did so understand and intend, a gross fraud was practiced on the defendant by him and the draftsman who drew the deeds ; that the parties, after they had agreed on the terms of the conveyances, as aforesaid, went to Benjamin George, Esq., stated the bargain to him, and employed him to draw conveyances proper to carry the bargain into effect ; that he drew the deeds under those instructions, and represented that by those conveyances the said Isaac Webster, jr., would have full control of the premises during his life, and the right to cut wood and timber, as he might think fit.

The answer admitted that the defendants had cut ten cords of wood for necessary fuel of the said Isaac Webster, jr., but denied that it was fit for timber, or unsuitable to be cut for fuel, and denied generally that any waste had been committed, and also denied that Isaac Webster, jr., had threatened to cut *all* the wood and timber on the land.

A large mass of evidence was taken, tending to show the character and quantity of the wood cut by the defendants ; the declarations and threats of the defendant, Isaac Webster, jr., the conduct of the parties, and the bargain between them, pursuant to which the conveyances were made, and that there was a mistake in drawing them, if the reservation did not make the estate of Isaac Webster, jr., dispunishable for waste.

It appeared that the premises conveyed were the homestead farm of Isaac Webster, on which he lived before and after the conveyance, and that he had several outlying pieces of woodland, not part of the farm nor connected with it. The plaintiff introduced evidence to show that, before the conveyance, Isaac Webster had been in the habit of obtaining part of the fuel

consumed by him on the farm from these outlying woodlands ; and also evidence that he had usually collected decayed and fallen wood for fuel, instead of cutting green standing trees.

*Wells & Bacon,* for the plaintiff.

*Marston* and *Stanyan,* for the defendants.

PERLEY, C. J. The deed of Isaac Webster, jr., to Levi B. Webster, and the deed of Levi to Isaac, bear the same date, and were intended to carry into effect the same bargain and arrangement, and are to be construed together. The deed from Levi to Isaac reconveys an estate for the life of the grantee, without any thing to indicate that the life estate should be without impeachment for waste.

The deed from Isaac to Levi conveys the land in fee simple, with the usual covenants of warranty, and contains this reservation : " reserving all the right, title, and interest in and unto the above-named land and premises for and during my natural life." Does this reservation make the estate for life of Isaac Webster dispunishable for waste ?

It would seem that no particular form of words is necessary to make an estate for life without impeachment for waste. *Goodright* v. *Barron,* 11 East 220.

Timber and wood standing and growing on land is in contemplation of law part of the land itself. When land is conveyed, the wood and timber growing on it are conveyed as parcel of it. The wood is not a product of the thing conveyed ; it does not issue out of the thing conveyed, in the nature of a crop or of increase. Tenant for life may take wood for his necessary fires, and timber for repairs ; otherwise he could not use and enjoy his estate. But the use of the land, the control and enjoyment of the land for life, imply no power to dispose of the wood and timber for other purposes, any more than to sell off the buildings or the soil itself.

A deed conveying all the right and title of the grantor in the land, conveys the land itself, and this is the usual and proper

form employed to release or quitclaim an estate in land. *Hall* v. *Chaffin*, 14 N. H. 215 ; *Mills* v. *Calin*, 22 Vt. 98 ; *Barton* v. *Morris*, 15 Ohio 408 ; *Tillinghast* v. *Frye*, 1 Angell 53.

A deed conveying all the right, title, and interest of the grantor for the life of the grantee, would convey the land for his life, and would have the same effect, and no higher, than if the deed had conveyed the land for life. When Isaac Webster reserved in his deed all his right, title, and interest in and to the land and buildings conveyed, he employed the usual and proper words to reserve the land itself for his life, and no inference can be drawn from the language of the deed that any thing more than a life estate was understood or intended to be reserved.

General words in a lease for years will not give power to fell timber.

The owner leased the manor of Swillington for eighty years, " cum boscis, boscorum renditionibus, magno maeremio, magnis arboribus, mineris carbonum, &c., to hold, in tam amplis modo prout the lessor habuit, vel jure habere potuit" — held that the lessee could not fell timber. Hobart 234, *Lord Darcy* v. *Askwith*.

Where land is granted, reserving to the grantor the use and control of the lands during his natural life, the reservation gives to the grantor but an estate for life in the land, and he has no right to cut and take timber trees therefrom for sale. *Richardson* v. *York*, 14 Maine 216.

The reservation in the deed of Isaac Webster of " all the right, title, and interest in and unto" the land, was the same in legal effect as a reservation of the land itself for his life, and gives no right to commit waste.

While the deed stands as the act and contract of the parties, parol evidence cannot be received to contradict or control it. This elementary general rule has been applied to the case of reservations in deeds. *Switch* v. *Sears*, 1 Hill 17 ; *Noble* v. *Bosworth*, 19 Pick. 314.

But a mistake in a deed or other written instrument may be rectified in equity. And where an instrument is drawn and

executed, which is intended to carry into effect a previous agreement, but which, by mistake of the draftsman, either as to fact or law, does not fulfill that intention, equity will correct the mistake. 1 Story's Equity 129 ; *Wooden* v. *Haviland*, 18 Conn. 101 ; *Stedwell* v. *Anderson*, 21 ditto 139 ; *Lavender* v. *Lee*, 14 Ala. 168 ; *Stone* v. *Hall*, 17 ditto 557.

And that is the case set up by the answer. And there is evidence, standing uncontradicted and unexplained, sufficient to satisfy us that the agreement between Isaac and Levi Webster was that Isaac should have the right to cut and sell off wood and timber as he pleased, and that, by the blunder and mistake of George, the draftsman, this right was not given by the deed.

But the evidence does not show that the conveyance was obtained by fraud.

The question then arises whether the defendants can set up this mistake by way of defence to the complainant's bill, without having the deed first corrected by a decree in a separate proceeding instituted for that purpose.

It has been sometimes stated in general terms that in equity a mistake in a written instrument may be shewn by parol proof, and relief granted to the injured party, whether he sets up the mistake affirmatively, or as a defence. There is such a remark in *Gillespie* v. *Moor*, 2 Johns. Ch. 596. Chancellor Kent there cites several cases. (*Jones* v. *Stratham*, 3 Atkins 388 ; *The Marquis of Townsend* v. *Strangroom*, 6 Vesey 333 ; *Ramsbottom* v. *Gosden*, 1 Vesey & Beames 524 ; and *Flood* v. *Findlay*, 2 Ball & Beatty 9.) These cases were all bills for the specific performance of contracts, and the Chancellor adds : "This is only one class of cases ; there is another class, in which the parol proof is to correct mistakes in bonds, deeds, settlements, mortgages, and generally in all contracts and agreements, and where the proof is introduced to aid the plaintiff in his bill as well as to aid the defendant in his defence." From the broad expressions here used it might be inferred that, as a general rule, a defendant might in equity show by parol a mistake in the deed or other instrument, under which the defendant

claimed, to defeat his bill. But all the cases, so far as they have come to my knowledge, in which a defendant has been allowed to show by parol evidence a mistake in a written instrument to defeat the plaintiff's bill, have been where the aid of the court was sought to carry into effect by specific performance the written contract in which the mistake was proved. In the language of *Reeh* v. *Jackson*, 6 Vesey 334, the plaintiffs sought " to obtain by a decree of the court a further security, or more ample interest than the party was in possession of by the paper itself."

In such case the evidence is not introduced to contradict the writing or control its legal effect, but a matter collateral to the writing is shown by parol, which is allowed to defeat the application of the plaintiff for the equitable intervention of the court in his favor. The contract remains untouched, and in full force; the court receive the parol evidence, not to correct the written instrument, but to show that the plaintiff ought in equity to be left to rely upon it as it stands, and should have no aid from the equitable jurisdiction of the court to give him by a decree for specific performance a larger legal estate or interest than he has under the writing which is proved to be erroneous.

In *Clowes* v. *Higginson*, 1 Vesey & Beames 527, it is said by Plumer, Vice Chancellor, that the parol evidence " is introduced, not to explain or alter the agreement, but, consistently with its terms, to show circumstances of mistake or surprise, making a specific performance, as in the case of fraud, unjust."

In the present case the plaintiff stands on his legal title, conveyed to him by the deed of Isaac Webster, one of the defendants. He does not set up the deed as an executory contract, and ask aid from the equitable jurisdiction of the court to carry it into effect specifically, and so give him an estate and interest in the land. He, to be sure, complains of an injury done, and a further injury threatened to his legal rights under the deed, and asks aid from the equitable jurisdiction of the court to protect his legal rights; but his title is vested and his legal right complete under the deed. And in

---

---

this respect his case differs from all those in which we have seen parol evidence admitted to show a mistake in a written instrument for the purpose of defeating the plaintiff's bill.

Courts of equity have proceeded with great caution in the exercise of their jurisdiction for the correction of mistakes in written instruments. No case has occurred to us in which the plaintiff has relied in his bill on a vested legal title, derived under a deed, and the defendant has been allowed to introduce parol proof of a mistake in the deed by way of defence to the bill, leaving the deed uncorrected and in full force. The course has been for the party, relying on the mistake, to bring a bill and have a decree correcting it. This, we think, is the safe and correct practice; and the evidence taken in this cause cannot be received to show a mistake in the deed under which the plaintiff derives his title.

In a suit at law, what is waste is a question of fact for the jury. In equity the court must find the fact, whether waste has been committed or threatened. The general principle governing the question is, that the tenant shall not be permitted to do any act of permanent injury to the inheritance, except to take his reasonable estovers. 1 Greenl. Cruise 116, note; *Chase* v. *Haseltine*, 7 N. H. 171; *Pynchon* v. *Stearns*, 11 Met. 304.

Whether cutting any particular kind of trees for fuel is waste, would depend upon the situation and circumstances, and perhaps, in some instances, on the custom of the district of country in which the land lay. Where oak trees are abundant and are in common use for fuel, it is not waste to cut them for that purpose. *Paddelford* v. *Paddelford*, 7 Pick. 152; and in this country no act of the tenant amounts to waste, unless it is or may be prejudicial to the inheritance.

Evidence of Isaac Webster's former practice in the manner of procuring the fuel used on the farm, was not competent on the question of waste. His rights would depend on his deed, construed according to the law of the land, and could not be extended or restrained by showing how he had used the land when he was the owner in fee simple.

Nor was he bound to resort, for any part of the fuel or timber necessarily and properly used on the farm, to outlying lands that did not belong to it. The land conveyed was a farm, described as such in the deed; the question is, whether the farm was used in a proper and husbandlike manner, and that question could in no way depend on the circumstance that the defendant had other unconnected land from which he might have taken wood and timber, if he had thought proper.

The evidence shows that the defendants cut about ten cords of wood, and drew it to the house on the premises for fuel. There were about one thousand cords of wood growing on the land. The quantity cut does not appear to be unreasonable for a year's supply.

As to the quality and value of the trees cut, the evidence is somewhat contradictory. The inference we draw from the whole is that about five small oak trees were cut and split into fuel that might have answered for certain descriptions of timber; but the quantity would have been small, and the salable value trifling, and it would have been bad economy to attempt to select these few sticks and dispose of them as timber.

There were other trees on the farm, scrub oaks, birch, and white maple, that might have been taken for fuel; but they were more difficult to get, and some of the witnesses say the wood for fuel could not have been cut with less injury to the farm in any other way. The tenant was entitled to take out of the thousand cords on the farm, good fuel, and such as was conveniently situated. The evidence fails to show that any substantial injury was done to the inheritance by cutting these ten cords of wood; certainly no amount of timber was cut which would warrant us in referring the cause to take an account.

But the defendant, Isaac Webster, asserts the right under the reservation in his deed to cut wood and timber, as he may think fit, and the evidence shows that he has proposed to sell and cut large quantities, and the injunction must be made perpetual against his committing waste; unless he desires the cause should be retained in order that he may have opportunity to bring a bill

to correct the alleged mistake in the deeds. If this plaintiff, in answer to such a bill, should positively deny the mistake, it might be questionable whether the evidence taken in this cause would be sufficient to overcome the denial.