## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

### MAJOR v. FICKLIN.

February 7th, 1889.

1. EQUITABLE JURISDICTION AND RELIEF—*Mistake—Case at bar.*—Husband contracts in writing to convey, with general warranty, his wife's land, which was charged with an annuity. Shortly afterwards vendee accepts a deed from husband and wife without warranty. Vendee, having been compelled to discharge arrears of the annuity twenty-four years later, filed his bill against husband, alleging that the warranty had been omitted from the deed by mistake and without his knowledge, and praying for indemnity. Husband answered, denying the allegation. Case being heard on bill and answer without depositions ;

HELD :

> Equity can relieve against a mistake, but this relief will be granted in cases of written instruments only where there is a plain mistake clearly made out by satisfactory proof.

2. CHANCERY PRACTICE—*Parties.*—Wife and other of her alienees of land similarly charged with said annuity not being parties to the contract under which the liability is sought to be fixed upon the husband, it was not necessary to make them parties to the suit.

Appeal from decree of circuit court of Culpeper county, rendered September 15th, 1887, in a chancery cause wherein Thomas K. Chandler, executor of Jane I. Ficklin, deceased, was complainant, and Elias Compton and Landon C. Major were defendants. Compton filed a cross-bill against the complainant and his co-defendant, Major, praying affirmative relief against the latter, and the decree being adverse to Major, he obtained an appeal and *supersedeas* from one of the judges of this court. Opinion states the case.

*John F. Rixey,* and *A. McD. Green,* for appellant.

*J. G. & W. W. Field,* and *C. H. Bolein,* for appellees.

LACY, J., delivered the opinion of the court.

The case is as follows : One George Ficklin died in the year 1852, leaving a large real estate, a widow and seven children surviving him. In the year 1853 the said children brought a suit in chancery in the circuit court of Culpeper county, under the style of *Coons and Wife* v. *Ficklin's Adm'r, &c.,* seeking a partition of the said real estate, and praying that the dower of the widow, Jane I. Ficklin, might be commuted by the payment of an annuity. This was done, the annuity fixed at $640, and $10,000 in the bonds of the corporation of Fredericksburg, then believed to be ample, set aside to secure it, and, in addition, a lien reserved on the lands of George Ficklin, deceased, to secure it. In 1863, the appellant, L. C. Major, who had married one of the daughters of George Ficklin, sold his wife's allotted share of the land to the appellee, Compton, and conveyed the same by deed, without a warranty, to the said Compton, in which his wife duly united in mode required by law. In 1869, the Fredericksburg bonds proving inadequate, and the annuity to Mrs. Ficklin being in arrears, a decree was rendered on the 13th day of November, 1869, ascertaining the amount due upon the said annuity to be $1,787.55, with interest thereon from the 20th day of May, 1869, and directing commissioners to sell the land allotted to each of the said heirs of George Ficklin, unless each one of them should pay to the said Jane I. Ficklin, one-seventh part of the said sum, with interest, etc. Mrs. Jane I. Ficklin having died, and Thomas K. Chandler having qualified as her executor, in May, 1887, the said executor filed the bill in this cause seeking to subject the lands allotted to Mrs. Mary V. Major, the wife of the appellant, L. C. Major, in the hands of their said alienee, Compton, to pay the said annuity ; alleging that Major and wife had never paid any of the annuity, and that they had alienated five hundred and

forty acres and twenty-two poles of this land to Elias Compton,
twenty acres and one rood to Thomas Hill, and twenty-one acres,
two roods, and thirty-seven poles to Strother H. Shaw; praying
that Elias Compton and L. C. Major be made parties defendant,
and required to answer the bill, and that the land sold Compton
might be sold to satisfy the debt above stated. To this bill
Major demurred for want of proper parties; and Compton an-
swered, admitting the truth of the allegations in the bill that
the lands sought to be sold were so liable, and, not being able
to deny the right of the plaintiff to subject his land, he asks
the court to ascertain the true amount due thereon before
any decree is rendered for a sale of the same. He fur-
ther alleged that on the 15th day of April, 1863 (doubtless
meaning the 10th day of April), he made and entered into
a written agreement with L. C. Major for the sale and pur-
chase of this land upon stated terms, for which a deed, with
general warranty, should be made without delay, and filed a
copy of the contract, dated April 10, 1863; that at the time of
this agreement he did not know of the lien which rested on this
land, and that on the —— day of ———, 18—, said L. C. Major
and *Virginia E.* Major, his wife, conveyed this land to him, but,
by a mistake of the draughtsman, the clause of general war-
ranty was omitted, and filed a deed dated April 10, 1863, and
acknowledged on the 26th day of June, 1863, which was signed
by L. C. Major and *Mary V.* Major; prayed that his said answer
might be treated as a cross-bill against his co-defendant, L. C.
Major, and that he might be summoned to answer the same, and
required to indemnify him for whatever amount he might be
required to pay on account of the said incumbrance on the land.
L. C. Major then demurred to and answered both the original
and the cross-bill, saying that the allegations in the original
bill in regard to the proceedings in the suit of *Coons* v. *Ficklin*
are true, but that he does not now know what is the amount
due; that, as to the allegations in the cross-bill, he did enter
into the said contract; that the land which he contracted to sell

Compton was the maiden land of his wife, which she inherited as one of the heirs of George Ficklin, deceased, and the fact that it was subject to a lien for Mrs. Ficklin's annuity was well known to him and others; and he denies that Compton was, as he alleges, ignorant of it. On the contrary, that he so informed Compton before the execution of the deed for the said land that said lien did exist upon the land, and that Compton was fully informed of it when he accepted said deed. He denied that the covenant of general warranty was omitted from the deed by any mistake whatever, and avers that the question of a general warranty therein was discussed at the making of the deed, and that he refused to give general warranty, and distinctly stated to said Compton that he would convey only such title as he himself had. This determination was brought about by a conversation with his wife subsequent to the making of said contract; that this determination was made known to Compton before the execution of the deed, and at a time when Compton could have insisted upon his right under the contract, or agreed to a cancellation of the same without injury to himself, and that he voluntarily accepted the deed as made, and thus waived whatever rights he had under the contract; and that he has no doubt that Compton was induced to so act because of the well-known fact that the annuity was secured by the investment in the $10,000 of Fredericksburg bonds, then supposed to be permanent. And the cause, being matured, came on to be heard upon the foregoing, without depositions. Whereupon, on the 15th day of September, 1887, the said circuit court of Culpeper rendered a decree overruling the demurrer, and holding that Major was liable to Compton under the covenant of general warranty contained in the contract of April 10, 1863; and, it appearing to the court that Compton had paid the amount due under the said lien, a reference was decreed to a commissioner to ascertain the amount for which Major was liable. From this decree Major applied for and obtained an appeal to this court.

The first error assigned here is as to the action of the court

in overruling the demurrer; that the suit was for the purpose of subjecting land sold by Mrs. Major, and she is not made a party, and that Thomas Hill and Strother H. Shaw should also have been made parties, as they bought a part of the lands allotted to Mrs. Major. It is a general rule in equity that all persons interested in the subject-matter of the bill, and which is involved in and to be affected by the proceedings and result of the suit, should be made parties, however numerous they may be. Bart. Ch. Pr. p. 133, and numerous authorities there cited; *Armentrout's Ex'ors* v. *Gibbons*, 25 Gratt. 375; *Dabney* v. *Preston*, Id. 842. Thomas Hill and Strother H. Shaw had no interest in the object of this suit, which was not brought to subject their land, and nothing was prayed against them, and they were not proper parties; they had no interest in and were not affected by the objects sought and the result of the suit. The same is true as to Mrs. Major. The suit was brought to subject land which had been sold by her, but nothing was sought nor asked against her, and she was not indeed a party to the contract under which a liability was sought to be fixed upon her husband, and it was not necessary nor proper to make her a party to the suit to charge him under his contract. And we think there was no error in the action of the circuit court in overruling the demurrers.

The next assignment of error is as to the action of the circuit court in holding the appellant, Major, liable under his contract of April 10, 1863, to make a deed to the appellee, Compton, with general warranty, which it is alleged, was omitted, by mistake from the deed. It has been said that when there is a written agreement the whole sense of the parties is presumed to be comprised therein; that it would be dangerous to make any addition to it in cases where there does not appear to be any fraud in leaving out anything; and that it is against the policy of the common law to allow parol evidence to add to or vary the terms of such an agreement. 1 Fonbl. Eq. bk. 1, ch. 3, § 11; *Irnham* v. *Child*, 1 Brown, Ch. 92, 93; *Woollam* v. *Hearn*, 7 Ves. 211.

As a general rule, there is certainly much to recommend the doctrine, but, however correct it may be as a general rule, it is very certain that courts of equity will grant relief upon clear proof of a mistake, notwithstanding that mistake is to be made out by parol evidence. *Marquis of Townshend* v. *Stangroom,* 6 Ves. 332, 333 ; *Wooden* v. *Haviland,* 18 Conn. 101. Lord Hardwicke said upon this subject: "No doubt but this court has jurisdiction to relieve, in respect of a plain mistake, in contracts in writing as well as against frauds in contracts ; so that, if reduced into writing contrary to the intent of the parties, on proper proof that would be rectified." *Henkle* v. *Royal Assurance Co.,* 1 Ves. Sr. 317 ; *Townshend* v. *Stangroom, supra; Shelburne* v. *Inchiquin,* 1 Brown, Ch. 338, 350. It is upon the same principle that equity relieves against a mutual mistake. But this relief will be granted in cases of written instruments only when there is a plain mistake, clearly made out by satisfactory proofs. *Gillespie* v. *Moon,* 2 Johns. Ch. 595, 630 ; *Henkle* v. *Assurance Co., supra.* This rule forbids relief whenever the evidence is loose, equivocal, or contradictory, or it is in its texture open to doubt or to opposing presumptions. Lord Thurlow is reported as saying in *Shelburne* v. *Inchiquin, supra,* that the parol evidence must be strong, irrefragible evidence, which has been criticised as too general ; and it has been considered that this evidence should be beyond reasonable doubt. *Attorney-General* v. *Sitwell,* 1 Younge & C. 583. And in the case of *McClellan* v. *Sanford,* 26 Wis. 595, it was thought that the evidence of the party interested alone was not sufficient; that it must be such as to establish the fact beyond fair and reasonable doubt—such as will strike all minds alike as being unquestionable and free from reasonable doubt, and which proves the mistake beyond a reasonable doubt. *Coale* v. *Merryman,* 35 Md. 382 ; *Miner* v. *Hess,* 47 Ill. 170; *Tufts* v. *Larned,* 27 Iowa, 330 ; *Edmond's Appeal,* 59 Pa. St. 220 ; *Hudson Iron Co.* v. *Stockbridge Iron Co.,* 107 Mass. 290.

Mr. Story says there is less difficulty in reforming written in-

struments when the mistake is mainly or wholly made out by other preliminary written instruments or memorandums of the agreement; and conveyances of real estate are often reformed and varied so as to be controlled by the terms of prior written contract. But in all such cases it must be plainly made out that the parties meant, in their final instruments, merely to carry into effect the arrangements designated in the prior contract or articles; for, as the parties are at liberty to vary the original agreement if the circumstances of the case lead to the supposition that a new intent has supervened, there can be no just claim for relief upon the ground of mistake. The very circumstance that the final instrument of conveyance or settlement differ from the preliminary contract affords of itself some presumption of an intentional change of purpose or agreement, unless there is some recital in it, or some other attendant circumstance, which demonstrates that it was merely in pursuance of the original contract. See the opinion of Staples, J., in *Carter* v. *McArtor,* 28 Gratt. 256, and authorities cited; *Whitney* v. *Smith,* 33 Minn. 124; *Stiles* v. *Willis,* 66 Md. 552.

In this case, when we come to apply these principles to the facts produced, we find that the plaintiff in the cross-bill alleges that the omission of the warranty clause was by mistake. He alleges that the contract was made on the 15th of April, 1863, and that the deed was made on the —— day of ——, 18—; and he does not waive an answer under oath, but calls upon the defendant to answer. The defendant answers under oath, and denies the mistake, and avers that the omission was made by mutual agreement, and the terms of the contract deliberately departed from. This answer is evidence, and is sufficient to overturn the allegations in the bill, and leaves the plaintiff without proof, while the defendant's case is established by his answer. In the case of *Stiles* v. *Willis, supra,* Judge Alvey, delivering the opinion of the court, said: "As was said by Lord Chancellor Eldon, in *Beaumont* v. *Bramley,* 1 Turn. & R. 41, in deciding cases of this nature, great weight must be given to

what is reasonably and properly sworn to on the part of the defendant; because it must be a very strong case that would, even in a recent transaction, operate to vary or to overturn a solemn instrument, but after the lapse of a long time it must be a case that leaves no sort of reasonable doubt in the mind of the court, and more especially is this so in cases where considerable time has elapsed." How do these two parties, Major and Compton, stand as to the support of attending circumstances? Compton says that the clause was omitted by mistake. Can he explain why this mistake was not observed by him, or, if observed, that he took no step to reform the deed from 1863 to 1887? Major says that the annuity for which the land was liable was secured in a way supposed to be ample, and that Compton, not being able to get a deed with a warranty, agreed to take it without; and the fact appears to be that Compton rested upon his deed until suit was brought to sell his land. Major has sworn to the facts he alleges as stated, and Compton has refrained from going upon the witness stand to contradict them, if not true. Major asserts that Compton agreed to take the deed in the form delivered to him. This Compton has never denied, and he must be held to have admitted it. *Moore* v. *Ullman,* 80 Va. 310; *Bowden* v. *Johnson,* 107 U. S. 251. We think the circuit court erred in its decree, holding that Major was liable to Compton for the money he had paid, and we are of opinion to reverse the decree for that cause, and remand the case for further proceedings therein, in order to a final decree in accordance with the foregoing views.

DECREE REVERSED.